UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 08-CV-60640-PAS

**COCONUT KEY HOMEOWNERS ASSOCIATION, INC.**, a Florida Non-Profit Corporation

    Plaintiffs,

v.

**LEXINGTON INSURANCE COMPANY**, a corporation authorized and doing business in Florida,

    Defendant.
_____/

## DEFENDANT'S MOTION TO AMEND ITS ANSWER AND AFFIRMATIVE DEFENSES TO CONFORM TO NEWLY DISCOVERED EVIDENCE AND INCORPORATED MEMORANDUM OF LAW

Defendant, LEXINGTON INSURANCE COMPANY, ("LEXINGTON") by and through the undersigned counsel, hereby files its Motion to Amend its Answer and Affirmative Defenses to Conform to Newly Discovered Evidence and Incorporated Memorandum of Law:

1.   This lawsuit arises out of claim made by COCONUT KEY for damage allegedly caused by Hurricane Wilma on October 24, 2005 to its property in Margate, Florida. Following its initial inspection, it was LEXINGTON'S determination that the property had suffered only minor damage, making a payment in accordance with its evaluation of the scope and quantum of same.

2.   However, in March of 2008, approximately two and a half years following Wilma, and without any previous notice from the insured, Plaintiff filed suit for breach of

contract, offering in paragraph 15 of its Complaint to allow for LEXINGTON to investigate this newly presented supplemental claim:

> 15. In an additional effort to resolve the dispute outlined in this Complaint and avoid protracted litigation, Plaintiffs [sic] are willing to allow the Defendant another opportunity to investigate the facts of the loss and, if possible, resolve all issues by meeting at the property directly with the Plaintiffs [sic] and counsel, and jointly re-inspecting the damage sustained to the property. On order to attempt resolution of the dispute, the Plaintiffs [sic] will agree to an Order staying this action for sixty (60) days. The Defendant may not presume an automatic stay but must provide, within twenty (20) days of service of this Complaint, Plaintiffs' [sic] with a definite date to meet at the property and conduct a joint re-inspection of the property.

3. Notably, however, the Complaint failed to quantify the scope and quantum of the new claim, noting only that the minimum jurisdictional requirement had been met. See Plaintiff's Complaint attached hereto as **Exhibit "A."**

4. In response to this lawsuit, notwithstanding the fact that Plaintiff had filed suit prematurely and in violation of the operative insurance policy and without waiver of its defenses thereto, LEXINGTON agreed to carry out the proposed inspection, inspecting the subject property on two separate occasions during the weeks of July 14, 2008 and of January 19, 2009. Its inspection did not uncover any unpaid damages to which Plaintiff would have been entitled.

5. Not finding any support for the insured's claims of damage during the inspections in July of 2008, Defendant answered COCONUT KEY'S lawsuit by including its Ninth Affirmative Defense as follows:

**Ninth Affirmative Defense**
Defendant asserts that some of the alleged damages and repair/replacement work included in Plaintiff's claim may be excessive, inflated and/or unreasonable in scope and/or cost.

See Defendant's Answer and Affirmative Defenses attached hereto as **Exhibit "B."**

6.  Evidence of concealment of materials facts and Plaintiffs false and fraudulent misrepresentations in the claims process as well as the inflation of damages became clear throughout discovery. However, due to how this claim had been presented by Plaintiff, LEXINGTON was forced to carry out its customary investigation into the facts of the insurance claim in the context of litigation. LEXINGTON recognizes the gravity of the fraud defense, and as a result, waited until it was in full possession of the relevant facts before moving to amend to add such a defense.

7.  Unfortunately, even though Defendant had requested her deposition starting on March 18, 2009, Plaintiff's 30(b)(6) was not in a position to testify substantively until the continuation of her deposition on June 23, 2009.[1]

8.  During discovery, Defendant inquired into the following as its sixth interrogatory:

> 6.  Please state each item of damage that you claim, and include in your answer what was damaged; the factual basis for each item of damages; and an explanation of how you computed each item of damage, including any mathematical formula.

See Plaintiff's responses to Defendant's interrogatories dated January 9, 2009, attached hereto as **Exhibit "C."**

9.  Plaintiff's verified answer to interrogatory six quantified the value of the insurance claim at $6,228,093.65. See Plaintiff's responses to Defendant's interrogatories dated January 9, 2009, previously attached hereto as Exhibit "C."

---

[1] In fact, to date, Plaintiff's 30(b)(6) witness, by her own admission, is still not able to fully testify as to the facts of this case.

10. Notwithstanding the sworn value of its insurance claim, Plaintiff's 30(b)(6) representative witness, Ejola Cook, testified in her continued deposition on June 23, 2009, that the insurance claim is actually only worth around four million dollars, while further noting that the "final number" has still yet to be definitively determined. Ms. Cook could neither account for this significant decrease in the quantum of Plaintiff's claim, nor could she indicate what damage the deducted $2.2 million was originally related to. See deposition of Ejola Cook at 79:23-25 to 80:1-5; excerpts of which are attached hereto as **Exhibit "D."**

11. To date, no explanation of the $2.2 million claimed damages has been provided. This is evidence of the false/fraudulent inflation of COCONUT KEY'S insurance claim, which pursuant to the operative policy of insurance, and Florida law under Schneer v. Allstate Indem. Co., 767 So. 2d 485 (3rd DCA 2000), voids the subject insurance policy in its entirety.

12. Further, Timothy Eakins, who signed the jurat page attached to Plaintiff's verified interrogatory responses, and who was the president of Plaintiff's board of directors at the time, testified in deposition on June 23, 2009, that he did not sign the Plaintiff's response to Defendant's Interrogatories, which document includes his signature. Instead, Mr. Eakins testified that he signed a jurat page which was attached to a handwritten document that did not contain figures on the amount of the insurance claim. In fact, Mr. Eakins testified that he does not know the basis for any of the quantified claims contained in Plaintiff's "verified" responses. See deposition of Timothy Eakins at 42:10-25; to 44:1-5; 86:18-25 to 95:1-21; excerpts of which are attached hereto as **Exhibit "E."**

13. The submission of "verified" interrogatories which are, in fact, not verified, is a misrepresentation of material fact which again, under the policy and at law, operates to void the subject insurance policy in its entirety.

14. In addition to the above, and in response to the subpoena duces tecum served upon him in advance of his deposition on June 11, 2009, Kenneth Romain, who was Plaintiff's original estimator, produced hundreds of damage photographs, an engineering report prepared by CJR & Associates opining as to the cause of Plaintiff's damage, and an estimate from Jimerico Construction opining as to the scope and quantum of same. These documents, which had been commissioned by Plaintiff and were specifically responsive to Defendant's initial Requests for Production 5, 6, 9, 11 12 and 13, were theretofore not known to Defendant and had not been produced by Plaintiff. See deposition of Kenneth Romain at 49:8-25 to 57:1-9; excerpts of which are attached hereto as **Exhibit "F."**

15. Plaintiff's intentional concealment of documents material in determining the quantum, scope and cause of the alleged damage at issue violates the operative policy; Florida law; and operates to void the subject insurance policy in its entirety.

16. Finally, Jeffery Dobbins of TSSA Storm Safe, the company which inspected Plaintiff's windows and doors on their behalf, testified during his May 22, 2009 deposition that the Garfinkel law firm ordered TSSA to increase the per-unit "inspection fee" by $50 per residential unit (for each the approximate 200 residential units) so that the Garfinkel law firm could be paid via Mr. Romain. No accounting for the propriety of this intentionally opaque transaction was given. See deposition of Jeffery Dobbins at

47:22-25 to 29:1-13; 93:17-25 to 98:1-17; 119:4-25 to 124:1-9; excerpts of which are attached hereto as **Exhibit "G."**[2]

17. Whereas the costs of this increased "fee" was ultimately passed along to the insured, and as a result, LEXINGTON as insurer, Mr. Dobbins' testimony is additional evidence of the false/fraudulent inflation of COCONUT KEY'S insurance claim, operating to void the subject policy in its entirety.

18. As discussed above, Plaintiff's multiple misrepresentations of material facts, concealments of material documents, and false/fraudulent inflations place it in repeated violation of the Concealment, Misrepresentation or Fraud provision included in the operative insurance policy. This provision reads as follows:

> A. CONCEALMENT, MISREPRESENTATION OR FRAUD
> This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
>    1. This Coverage Part;
>    2. The Covered Property;
>    3. Your interest in the Covered Property; or
>    4. A claim under this Coverage Part.

See Form CP0090 attached hereto as **Exhibit "H."**

19. While LEXINGTON'S original Ninth Affirmative Defense may adequately encompass the initial false inflation of Plaintiff's insurance claim, it does not address Plaintiff's additional misrepresentations in its allegedly verified responses to Defendant's interrogatories, fraudulent dealings during the preparation of its windows and doors claim, nor does it address the intentional concealment of engineering reports and photographs which are material to LEXINGTON'S evaluation of Plaintiff's alleged loss.

---

[2] Excerpts include Mr. Dobbins' errata sheet dated July 1, 2009.

20.     Accordingly, Defendant hereby seeks leave of the Court to amend its Answer and Affirmative Defenses to specifically plead, as its Tenth Affirmative Defense, the intentional concealment/misrepresentation during discovery and false/fraudulent inflation of Plaintiff's insurance claim. Defendant's proposed Second Amended Answer and Affirmative Defenses is attached hereto as **Exhibit "I."**

## MEMORANDUM OF LAW

Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend a pleading with leave of the Court, which "shall be freely given when justice so requires." This mandate of liberal amendment even extends to amendment of pleadings at trial to conform to the evidence. See Fed.R.Civ.P. 15(b). Although the grant or denial of an opportunity to amend lies in the discretion of the Court, the Supreme Court has dictated that the Rule 15(a) "mandate is to be heeded." Foman v. Davis, 371 U.S. 178, 182 (1962) (district court abused its discretion by not allowing the plaintiff to amend her complaint after judgment of dismissal had been entered to state an alternative theory of quantum meruit); Laurie v. Alabama Court of Criminal Appeals, 256 F.3d 1266, 1274 (1st Cir, 2001) ("There must be a substantial reason to deny a motion to amend.").

Absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . or futility of the amendment, the leave sought should, as the rules require, be 'freely given." Id.; see U.S. v. Houghman, 364 U.S. 310, 317 (1960); see also Conley v. Gibson, 355 U.S. 41, 48 (1987) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel

may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."). Should a Court refuse to grant a leave without offering a justifying reason, it is an abuse of discretion and "inconsistent with the spirit of the Federal Rules." Foman, 371 U.S. at 182.

Here, neither undue delay, bad faith, nor dilatory motives play any part in Defendant's intent to amend its Affirmative Defenses in this case. Rather, information recently developed in discovery has revealed that: (1) Plaintiff has concealed material documentation evidencing the condition of the subject property following Hurricane Wilma; (2) Plaintiff's counsel misrepresented to Defendant that Plaintiff's responses to Defendant's initial interrogatories had been verified by COCONUT KEY, yet Mr. Eakins, who was Plaintiff's representative at that time, has testified that he had never seen the submitted responses, and was unaware of the quantified insurance claim made therein; and (3) Plaintiff submitted an insurance claim for $6,228,093.65, yet in deposition, Plaintiff's 30(b)(6) representative testified that the true value of the insurance claim was closer to $4 million, without any accounting for the approximate $2.2 million decrease in value. Pursuant to the Concealment, Misrepresentation or Fraud Provision of the subject policy, any one of the foregoing acts will operate to void the subject insurance policy in its entirety.

**WHEREFORE**, Defendant, LEXINGTON INSURANCE COMPANY, respectfully requests that this Honorable Court grant Defendant leave to amend its Answer and Affirmative Defenses so as to conform to the newly discovered evidence as discussed above, and any such further relief as the court deems just and fair.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(3)

Defendant hereby certifies that it has complied with Local Rule 7.1(A)(3) by consulting with Plaintiff's counsel. Plaintiff has noted its objection to the relief sought.

Respectfully Submitted,

**BERK, MERCHANT & SIMS, PLC**

**/s/ MELISSA M. SIMS**
William S. Berk, Esq.
wberk@berklawfirm.com
Florida Bar No.: 349828
Melissa M. Sims, Esq.
msims@berklawfirm.com
Florida Bar No.: 85936
Seric J. Fallon, Esq.
sfallon@berklawfirm.com
Florida Bar No.: 40979
2100 Ponce De Leon Blvd., PH1
Coral Gables, Florida 33134
Phone: (786) 338-2878
Fax: (786)338-2888
***Attorneys for Defendant***

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the List below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Keith J. Lambdin, Esq.
Florida Bar No.: 796999
klambdin@askthefirm.com
John D. Mallah, Esq.
Florida Bar No.: 457760
jmallah@askthefirm.com
Katzman Garfinkel
300 N. Maitland Avenue
Maitland, FL 32751
Telephone:   407-539-3900
Facsimile    407-539-0211
***Attorneys for Plaintiff***

                                  **/s/ MELISSA M. SIMS**
                                  Melissa M. Sims